**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**CARDINAL ENERGY, LLC,**

        **Plaintiff,**

**v.**                    **//   CIVIL ACTION NO. 1:16CV187**
                                     **(Judge Keeley)**

**EQUITRANS, LP;
EQT GATHERING, LLC; and
CURTIS YOAK,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [DKT. NO. 10]**

On August 23, 2016, the plaintiff Cardinal Energy, LLC ("Cardinal"), filed this action in the Circuit Court of Marion County, West Virginia, against defendants Equitrans, LP ("Equitrans"), EQT Gathering, LLC ("EQT Gathering"),[1] and Curtis Yoak (Dkt. No. 1-1). On September 23, 2016, the defendants timely removed the case to this Court, citing federal question jurisdiction (Dkt. No. 1). Cardinal moved to remand the case to state court on October 21, 2016 (Dkt. No. 10). After full briefing, the Court heard argument on the motion on December 21, 2016 (Dkt. No. 17), and for the reasons that follow, finds that it lacks subject matter jurisdiction on the basis of federal question. It therefore **GRANTS** Cardinal's motion to remand (Dkt. No. 10), and **REMANDS** this case to the Circuit Court of Marion County, West Virginia.

---

[1] The two corporate defendants will be referred to collectively as "the EQT defendants."

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

## I. BACKGROUND

**A.    Factual Allegations**

Cardinal operates gas wells located in Marion County, West Virginia, and the EQT defendants own and operate a pipeline system for the transportation of natural gas (Dkt. No. 1-1 at 2). On December 19, 2008, Cardinal and Equitrans executed a Gathering Interconnect Agreement ("Agreement") that governs the transportation of Cardinal's gas. Gas produced from Cardinal's wells is transported through the EQT defendants' pipeline and sold to Dominion Resources ("Dominion"), which pays Cardinal based on Cardinal's production as reported by the EQT defendants' meter readings. The meters at issue in this case are Weekley Meter No. 24104 and Stalnaker Meter No. 23883. Id. at 3.

Pursuant to the Agreement, as well as prior agreements, Cardinal installed "high-tech satellite telemetry Flow Boss Meters," which were constructed by Gas Analytical and certified by the EQT defendants. Id. In 2010, after settlement of certain litigation, the EQT defendants reimbursed Cardinal approximately $12,000 related to the meter installation. In 2010 and 2011, the EQT defendants then replaced the Flow Boss meters with older, mechanical Barton meters without providing any explanation.

2

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

Cardinal soon began to notice problems with the Barton meters. Among these problems were recording pens becoming stuck or running out of ink, batteries running out of power, charts being left on for too long, lack of proper calibration, and the failure of moving parts. Although Cardinal reported these malfunctions to the EQT defendants, including several complaints in 2015, the defendants allegedly denied any problems and only made repairs when presented with video evidence. Id. at 4-5.

Defendant Curtis Yoak ("Yoak") is employed by the EQT defendants and monitors meters, including those owned by Cardinal. In the past, he has expressed personal animus toward Randy Elliot, one of Cardinal's owners. Cardinal alleges that, despite open and obvious problems with its meters, Yoak did not report or repair the issues. Id. at 6-7. Nor has Cardinal received notice of any adjustment as a result of the alleged malfunctions. Id. at 5.

On July 15, 2015, the EQT defendants directed Cardinal to shut off all meters, including the Weekley and Stalnaker Meters at issue here, due to service work on the Underwood Compressor Station ("UCS"). Although the EQT defendants have the right to control flow in order to conduct maintenance, Cardinal alleges that it was singled out for closure and shut out two months prior to any work being performed on UCS. Moreover, other wells and meters – owned by

larger producers – were not required to be shut in, and some other producers continued to produce even after being ordered to shut down their wells. Unlike Cardinal, those producers did not have their meters locked out by the EQT defendants. <u>Id.</u> at 5-6.

On October 15, 2015, while its wells were shut in, Cardinal hired Gas Analytical to investigate the Weekley and Stalnaker meters. The EQT defendants had stated that the meters were operating properly, but Gas Analytical found loose linkage, carbon in the orifice plates, and other adjustments that needed to be made. It calibrated the meters, but they continued to malfunction after being put back into production on March 14, 2016. <u>Id.</u> at 7.

## B.  Claims for Relief

Cardinal claims to have suffered damages as a result of the alleged defective condition of the Barton meters. It claims that when the 2008 and 2009 production from the Weekley and Stalnaker Flow Boss meters is compared to subsequent years after the Barton meters were installed, there is an average yearly difference of 32,000 mcf.[2] Therefore, Cardinal claims that, when calculated with an average rate of $3.50 per mcf, the defendants' actions have

---

[2] When calculated in this manner, the average yearly mcf difference seems to take into account the time period in 2015 during which Cardinal alleges to have been prejudicially shut down for the EQT defendants' maintenance on the UCS.

resulted in the loss of $560,000 in production that was conveyed to Dominion but not accurately measured by the EQT defendants' Barton meters. Id. at 8.

Cardinal's complaint makes three state-law claims for relief. Count One alleges that "[t]he defendants were negligent in failing to properly monitor, service and calibrate the Barton Meters as set forth above," resulting in the loss of "$560,000.00 for gas produced but not properly reported." Id. at 9. Likewise, Count Two claims that "[t]he EQT defendants have breached the Interconnect Agreement . . . by failing to properly record and report to Dominion the production," resulting in the same $560,000 loss. Id. In addition, Count Three adds that "[t]he aforesaid actions and conduct of the defendants were intentional, wilful, wanton and malicious toward the plaintiff and was [sic] in retaliation for actions of the plaintiff." Id. at 10. In total, Cardinal's complaint seeks $600,000 in compensatory damages and $5,000,000 in punitive damages. Id. at 11.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

or the defendants." "The burden of establishing federal jurisdiction is placed upon the party seeking the removal." Mulcahey v. Columbia Organic Chems., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

Federalism counsels that removal jurisdiction should be strictly construed. Palisades Collections LLC v. Shorts, 552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)). As this Court has previously noted, "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction," and thus remanding a case to state court. Vitatoe v. Mylan Pharmaceuticals, Inc., 2008 WL 3540462, at *2 (N.D.W. Va. Aug. 13, 2008) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)). When considering a motion to remand, the Court is limited to considering the record at the time of removal. See Lowrey v. Ala. Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007). Here, the Court is limited in its consideration to the facts alleged in the complaint.[3]

---

[3] The Agreement was neither attached to the complaint nor filed with the notice of removal. The defendants advise that this is because the Agreement contains a confidentiality clause (Dkt. No. 5 at 4 n.1). Neither party sought leave to file the Agreement under seal.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [DKT. NO. 10]

### III. APPLICABLE LAW

District courts have original jurisdiction to hear cases involving a federal question, those cases that "arise under" federal law or the Constitution. 28 U.S.C. § 1331. The clearest cases are those where federal law creates the cause of action asserted. <u>Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916). Pursuant to the well-pleaded complaint rule, a case "arise[s] under" federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). The existence of a federal defense is therefore not typically sufficient to establish federal question jurisdiction. <u>Id.</u> at 398.

In a limited number of circumstances, state-law claims may be sufficient to establish federal question jurisdiction. "Where state law creates the cause of action, federal-question jurisdiction will nonetheless lie if the 'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" <u>Columbia Gas Transmission Corp. v. Drain</u>, 191 F.3d 552, 557 (4th Cir. 1999) (quoting <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 27-28 (1983)). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer

federal-question jurisdiction." <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986).

District courts must inquire whether "a state-law claim necessarily raise[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibility." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 133 S.Ct. 1059, 1065 (2013). This is a "special and small category" of cases. <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006). The Supreme Court of the United States has distinguished cases that involve "nearly 'pure issue[s] of law' . . . 'that [can] be settled once and for all'" from those that are "fact-bound and situation-specific." <u>Id.</u> at 700-01.

In <u>Pressl v. Appalachian Power Co.</u>, a recent Fourth Circuit case, the landowner plaintiffs brought an action in Virginia state court "seeking a declaration of their rights to build a dock on property subject to a flowage easement" owned by defendant

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

Appalachian Power Company ("APCO"). 842 F.3d 299, 301 (4th Cir. 2016). APCO removed the case to the district court, arguing that federal question jurisdiction existed because the flowage easement was "within the project boundary for APCO's Smith Mountain hydroelectric project, which APCO operate[d] under a license issued by [FERC]." Id. at 302. Applying the test from Grable, the Fourth Circuit determined that federal question jurisdiction did not lie.

In Pressl, APCO had acquired the easement separately from its federal license, and the plaintiffs did not challenge APCO's duties to FERC. Therefore, because the plaintiffs only challenged the extent of APCO's property rights under a state conveyance, the Fourth Circuit concluded that there was no necessarily raised federal issue. Id. at 303-04. Moreover, our circuit court concluded that not every legal theory supporting the plaintiff's interpretation of the easement required the resolution of a federal issue. Id. at 304. Virginia law applied to interpret the easement, and the most important factor was the language of the easement itself, not the strictures of APCO's FERC license. Id. at 304-05.

There also was no dispute over APCO's federal license or the duties it owed to FERC; therefore, no federal question was actually disputed. Id. at 305. Finally, as there was no substantial federal interest in interpreting the flowage easement, to exercise

jurisdiction would "disrupt the congressionally approved federal-state balance." Id. "State courts are just as able (perhaps more able) to interpret and enforce the property rights conveyed through instruments governed by state law." Id.

## IV. LEGAL ANALYSIS

In support of its motion to remand, Cardinal contends that its complaint contains only state-law claims that do not necessarily raise any federal issues (Dkt. No. 11 at 9-10). The defendants, however, assert that Cardinal's allegations implicate both the filed-rate doctrine and duties arising under the Natural Gas Act ("NGA"), rather than state tort law or the Agreement (Dkt. No. 14 at 8-10).[4]

In particular, reflecting certain allegations in the complaint about their discriminatory treatment of Cardinal, the defendants raise their duty under the NGA not to "(1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other

---

[4] The defendants allude repeatedly to FERC's exclusive jurisdiction over the federal issues that they claim are raised in this case. However, because Cardinal has only made state-law claims, the NGA's grants of exclusive jurisdiction only apply if the Grable test is satisfied. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S.Ct. 1562 (2016).

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [DKT. NO. 10]

respect, either as between localities or as between classes of service." 15 U.S.C. § 717c(b). In support of their argument that the Grable test is satisfied by the existence of these duties, the defendants rely chiefly on persuasive authority from the District of Minnesota that has since been overturned by the Eight Circuit. See Great Lakes Transmission Ltd. P'ship v. Essar Steel Minn., LLC, No. 16-1101, 2016 WL 7046743 (8th Cir. Dec. 5, 2016) ("[T]here is little national interest in having a federal court interpret tariff provisions if it will merely apply state law.").

After careful review, the Court concludes that the defendants' arguments lack merit, and that they have not satisfied their burden to establish subject matter jurisdiction in this case. Cardinal is the "master of the claim" and may "avoid federal jurisdiction by exclusive reliance on state law." Pinney v. Nokia, Inc., 402 F.3d 430 (4th Cir. 2005) (quoting Caterpillar, 482 U.S. at 392). The defendants cannot seek removal based on a recharacterized version of Cardinal's complaint. Because, as discussed below, neither the filed-rate doctrine nor any substantial federal issue establish federal question jurisdiction, this case must be remanded.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [DKT. NO. 10]

## A.    Filed-Rate Doctrine

The defendants have not established that Cardinal's complaint raises a federal question by implication of the filed-rate doctrine. Contrary to the defendants' arguments, the reference in the complaint to an average rate of $3.50 per mcf is insufficient to confer subject matter jurisdiction on this Court (Dkt. No. 14 at 8-10).

Because a federal tariff is equivalent to a federal regulation, "a filed tariff carries the force of federal law." Bryan v. BellSouth Commc'ns, Inc., 377 F.3d 424, 429 (4th Cir. 2004). Therefore, an action seeking to enforce, alter, or invalidate the terms of a tariff, such as the rates thereunder, raises a federal question. See id. at 429-30. The "'filed-rate doctrine' . . . forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." Ark. La. Gas Co. v. Hall, 453 U.S. 571, 577 (1981) (noting that the doctrine has its origins in Supreme Court precedent interpreting the Interstate Commerce Act). "The doctrine's purpose is twofold: to prevent discrimination among consumers and to preserve the rate-making authority of federal agencies." Bryan, 377 F.3d at 429.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

Therefore, neither a state nor federal court may hear a case that "does not, in theory, attack the filed rate, [but] an award of damages . . . would, effectively, change the rate paid." Id. (quoting Hill v. BellSouth Telecommunications, Inc., 364 F.3d 1308, 1316 (11th Cir. 2004)). Indeed, "[i]t would undermine the congressional scheme of uniform rate regulation to allow a state court to award as damages a rate never filed with the Commission and thus never found to be reasonable within the meaning of the Act." Hall, 453 U.S. at 579.

Cardinal's allegations in this case are markedly different from other cases where courts have applied the filed-rate doctrine. For instance, in Hill v. BellSouth Telecommunications, Inc., the plaintiff brought state-law claims challenging the defendant's "alleged practice of misleading customers about the filed tariffs it charged to customers." 364 F.3d at 1311. The claims at issue were based on the Georgia Unfair Trade Practices Act as well as common law fraud and negligent misrepresentation. Id. at 1312. The Eleventh Circuit reasoned that, because the claims effectively sought to recoup portions of the rate that the defendant had charged pursuant to a filed tariff, the claims "would have the effect of retroactively reducing" the plaintiff's rate. Id. at 1316. An award of such damages would fall prey to both the

nondiscrimination and nonjusticiability principles embodied in the filed-rate doctrine. Id. at 1317. Therefore, the court found there was federal question jurisdiction and dismissed the claims. Id.

Similarly, in Bryan v. BellSouth Communications, Inc., the Fourth Circuit addressed whether the filed-rate doctrine applied to bar a claim brought under the North Carolina Unfair Trade Practices Act. Bryan, 377 F.3d at 428. The court concluded that the only plausible reading of the relevant claims was that they sought a refund of a portion of the rate charged under a filed tariff. Therefore, resolution of the claim would require the court to pass on the reasonableness of the defendant's filed rate, and it was thus barred by the filed-rate doctrine. Id. at 432.

The Supreme Court has recognized the filed-rate doctrine in a case involving the NGA. In Arkansas Louisiana Gas Co. v. Hall, the parties had entered into a contract, filed with and authorized by FERC, for the sale of natural gas. Hall, 453 U.S. at 573. In 1974, the sellers filed suit in state court, arguing that a provision of the contract should have operated to increase the applicable rate from 1961 forward. Id. at 574.

The Supreme Court of Louisiana ultimately concluded that, because the buyers had failed to inform the sellers of certain contract-relevant facts, the sellers had been precluded from filing

rate increases with FERC and were entitled to damages for the period during which a higher rate should have been applicable. Id. at 575. The Supreme Court of the United States overturned that judgment, finding that, even though a breach of contract may have prevented the seller from filing rate increases, the filed-rate doctrine prevented a state court from retroactively applying a rate other than that filed with FERC during the relevant period. Id. at 578-79.

The facts alleged in the instant lawsuit stand in stark contrast to the facts in these cases. Cardinal alleges that it has lost "approximately 32,000 mcf per year" because its production was "not accurately measured by the Barton Meters" (Dkt. No. 1-1 at 8). The complaint applies an "average" rate of "$3.50 per mcf" to arrive at an alleged monetary loss totaling $560,000. Id. Cardinal's demand for compensatory damages is then rounded up to $600,000. Id. at 11. When analyzing the allegations in the complaint under the well-pleaded complaint rule, none of Cardinal's claims for relief challenges the reasonableness of the EQT defendants' filed rate or seeks to apply a different rate. Each of the claims simply seeks to collect the net amount Cardinal would have received had the defendants properly reported its production to Dominion.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

Unlike <u>Bryan</u> and <u>Hill</u>, where the state-law claims effectively challenged the reasonableness of the filed-rate, Cardinal's claims for negligence, breach of contract, and intentional conduct take issue with the defendants' conduct as it relates to certain specific meters. <u>Id.</u> at 9-10. In addition, unlike <u>Hall</u>, where the plaintiffs sought damages based on a higher rate that may have applied absent the defendant's breach of contract, <u>Hall</u>, 453 U.S. at 574, Cardinal's breach of contract claim relates to the proper measurement of its production, not a different rate that should have been applied (Dkt. No. 1-1 at 9).

The "average" rate that Cardinal uses to calculate its damages simply bears no relation to the claims it has made. Exercising jurisdiction and dismissing this suit pursuant to the filed-rate doctrine would serve neither the nondiscrimination nor nonjusticiability principles underlying the doctrine. <u>Bryan</u>, 377 F.3d at 429. Indeed, "a judgment in plaintiffs' favor would require this court neither 'to invalidate a filed rate nor assume a rate would be charged other than the rate adopted by the federal agency." <u>PPL EnergyPlus, LLC v. Nazarian</u>, 753 F.3d 467, 474 n.1 (4th Cir. 2014) (quoting <u>Pub. Util. Dist. No. 1 v. IDACORP Inc.</u>, 379 F.3d 641, 650 (9th Cir. 2004)). If the defendants are found to be guilty of negligence, breach of contract, or intentional

conduct, the Court would not be required to apply Cardinal's average rate, as it would not be the proper measure of damages. Therefore, because Cardinal does not challenge the reasonableness of the EQT defendants' rates, and the effect of its claims would not be to apply a different rate, the filed-rate doctrine is not implicated in this case.

**B.   Federal Question Jurisdiction Under <u>Grable</u>**

Because the filed-rate doctrine does not apply here, the defendants must establish that the state-law claims of Cardinal's complaint present a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn</u>, 133 S.Ct. at 1065. The defendants have not met their burden to establish that this case falls within the "special and small category" of state-law claims that confer federal question jurisdiction on the Court. <u>Empire Healthchoice</u>, 547 U.S. at 699; <u>Mulcahey</u>, 29 F.3d at 151.

1.   <u>Necessarily Raised</u>

The defendants have identified a number of federal issues relevant to the facts of this case, but none of those issues is necessarily raised by Cardinal's state-law claims for relief. "[A]

plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when <u>every</u> legal theory supporting the claim requires the resolution of a federal issue." <u>Flying Pigs, LLC v. RRAJ Franchising, LLC</u>, 757 F.3d 177, 182 (4th Cir. 2014) (quoting <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004) (en banc)). Neither the tort or breach of contract claims requires resolution of a federal issue.

First, West Virginia law, not federal law, provides the applicable duty of care for Cardinal's tort claims, which will succeed or fail accordingly. <u>See</u> Syl. Pt. 3, <u>Aikens v. Debow</u>, 541 S.E.2d 576 (W. Va. 2000) ("In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff."); Syl. Pt. 3, <u>Sewell v. Gregory</u>, 371 S.E.2d 82 (W. Va. 1988) ("The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised."). Although it is conceivable that a West Virginia court would reference federal statutory duties as it determines the applicable duty of care, it would certainly not be required to do so. Therefore, Cardinal's tort claims do not necessarily raise a federal issue. <u>See</u> <u>Pressl</u>, 842 F.3d at 304-05 (citing <u>Columbia Gas Transmission Corp. v. Drain</u>, 191 F.3d 552 (4th Cir. 1999)) (holding

that interpreting the scope of a state-law easement did not necessarily raise a federal issue when "the most important factor . . . is the language of the easement itself").

The breach of contract claim likewise does not necessarily raise a federal issue. In order for Cardinal to succeed on this claim, it must prove that the defendants breached the terms of the Agreement.[5] The elements of a breach of contract claim are that "there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach." McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010) (citing Hart v. Arnold, 884 A.2d 316, 332 (Pa. Super. 2005)). Although the defendants cite federal law, particularly their obligations under the NGA, as providing the controlling duties (Dkt. No. 14 at 9), Cardinal chose not to make claims based on those duties.

Cardinal's claims are based on the defendants alleged failure to properly record and report production to Dominion as required by the Agreement (Dkt. No. 1-1 at 9). In order to succeed on its breach of contract claim, Cardinal must prove that such duties are embodied in the Agreement. The defendants have not established how

---

[5] The defendants aver that the Agreement contains a choice of law provision selecting Pennsylvania as the governing law (Dkt. No. 5 at 13 n.1).

interpretation of the Agreement's duties necessarily relies on an application of federal law. In fact, Cardinal avers that the Agreement does not mention FERC or the NGA (Dkt. No. 15 at 5). Therefore, its breach of contract claims do not necessarily raise a federal issue.

    2.  <u>Actually Disputed</u>

Cardinal's complaint does not dispute the reasonableness of the EQT defendants' rates or tariff. What Cardinal's allegations do make clear is that the defendants' compliance with NGA duties would be actually disputed. The EQT defendants may not "make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage." 15 U.S.C. § 717c(b). Cardinal alleges that it "lost production for approximately two months during July and August of 2015, while [its] meters were shut off by the EQT defendants while other producers were permitted to continue to produce" (Dkt. No. 1-1 at 8). This factual allegation amounts to an argument that the defendants have failed to comply with their duties under 15 U.S.C. § 717c(b) by treating Cardinal in an unduly prejudicial manner. The defendants dispute the allegation (Dkt. No. 14 at 12).

3.    <u>Substantial</u>

Even if the Court assumes that the purported federal issues are necessarily raised and actually disputed, it is apparent that they are "not substantial in the relevant sense." <u>Gunn</u>, 133 S.Ct. at 1066. Indeed, any federal issue necessarily raised and disputed in this case may be substantial to the parties, but, in order to establish federal question jurisdiction, the issue must be substantial "to the federal system as a whole." <u>Id.</u> The Supreme Court has defined the contours of this requirement in the two landmark cases of <u>Grable</u> and <u>Gunn</u>.

In <u>Grable</u>, the plaintiff brought a state-law quiet title action but alleged "that the IRS had failed to comply with certain federally imposed notice requirements." <u>Grable</u>, 545 U.S. at 310-11. The Supreme Court found federal question jurisdiction because the government had a strong interest in recovering delinquent taxes through property sales." The government thus had a "direct interest in the availability of a federal forum to vindicate its own administrative action." <u>Id.</u> at 315.

On the other hand, in <u>Gunn</u>, the plaintiff brought a state-law legal malpractice claim. To succeed on the claim, the plaintiff had to show that, if the defendant had raised a certain "experimental use" argument in an underlying patent case, the result of the

underlying case would have been different. Gunn, 133 S.Ct. at 1067. The Supreme Court reasoned that, although the hypothetical question held great significance to the parties, it would affect neither the outcome of the underlying case nor the continued development of patent law precedent. Id.

Here, Cardinal has brought state-law claims for negligence, breach of contract, and intentional conduct. The federal issue alleged to be substantial is whether the EQT defendants violated their federally imposed duty to act with fairness toward producers. See 15 U.S.C. § 717c. Were a court required to answer that question, it would not fit within the narrow category of cases defined by the Supreme Court, which answers "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases." Empire Healthchoice Assur., Inc., 547 U.S. at 700. In contrast, this case presents "fact-bound and situation-specific" questions concerning whether the defendants have complied with their duties under the NGA only as they are relevant to a state-law tort or contract claim. Id. at 701.

Although, concededly, in deciding this case a court may be required to interpret the Agreement, which pertains to an industry heavily regulated by FERC, the interpretation of that Agreement will be governed by state law; the federal system as a whole would

22

not benefit from an interpretation of how this isolated contract between two parties should be interpreted under one state's law. See Great Lakes Gas, 2016 WL 70467343, at *6. The terms of the Agreement apply only to the parties that executed it, not every participant in the natural gas industry. The state court can readily decide if the defendants have breached duties imposed upon them by contract or tort law.

    4.  Capable of Resolution

    Finally, exercising jurisdiction over this case would be inconsistent with the congressionally approved balance of power set by the NGA. The NGA provides that the district courts have "exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 15 U.S.C. § 717u.

    The Court takes note of the Eight Circuit's conclusion that this provision does not evince a congressional intent to provide a federal forum for breach of contract claims. Great Lakes Gas, 2016 WL 70467343, at *7. In Great Lakes Gas, the contract at issue incorporated provisions of a tariff, thus requiring the district court to apply state law and interpret the provisions. Id. at *5.

On review, the Eighth Circuit concluded that, although the tariff was properly considered federal law, interpretation of the parties' contract did not present a federal question pursuant to <u>Grable</u>. It noted that the NGA's grant of exclusive jurisdiction provides "no federal cause of action and no preemption of state remedies," thus providing an "important clue" that Congress disfavored federal involvement in related state-law claims. <u>See</u> <u>id.</u> at *7 (quoting <u>Grable</u>, 545 U.S. at 318).

Had Congress intended to divest state courts of their ability to hear common law tort and breach of contract claims such as those alleged by Cardinal here, it could have done so. Instead, it chose to grant exclusive jurisdiction only over specific suits brought to enforce the NGA. <u>See</u> 15 U.S.C. § 717u. Much as "[t]he interpretation of a state conveyance is a quintessential question of state property law," <u>Pressl</u>, 842 F.3d at 305, the adjudication of tort and contract claims properly lies with the state unless Congress clearly intends otherwise. Therefore, exercising federal question jurisdiction over state-law claims that do not allege violations of the NGA would "disrupt the federal-state balance approved by Congress." <u>Gunn</u>, 133 S.Ct. at 1065.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [DKT. NO. 10]**

## V. CONCLUSION

For the reasons discussed, the Court concludes that it lacks subject matter jurisdiction to hear this case. It therefore **GRANTS** Cardinal's motion to remand (Dkt. No. 10) and **REMANDS** this case to the Circuit Court of Marion County, West Virginia.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: December 22, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE